# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00261-COA

**ESTATE OF AMELIA BUTLER, BY AND THROUGH THE ADMINISTRATOR, JONATHAN BUTLER; JAMES BUTLER, PERRY BUTLER, ANGELA JOHNSON, JENNIFER BUTLER, JEREMIAH BUTLER AND JAKESHA BUTLER, INDIVIDUALLY**                                 APPELLANTS

**v.**

**PHC-CLEVELAND INC. D/B/A BOLIVAR MEDICAL CENTER**                                 APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2017 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | AZKI SHAH |
| ATTORNEYS FOR APPELLEE: | KIMBERLY NELSON HOWLAND |
| | CHARLES EDWARD COWAN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 06/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Jonathan Butler initiated a lawsuit in the Bolivar County Circuit Court against PHC-Cleveland Inc. d/b/a Bolivar Medical Center ("Bolivar"), alleging that his mother, Amelia Butler, died as a result of Bolivar's medical malpractice. Bolivar filed a motion for summary judgment, asserting that Jonathan's claims were barred by the statute of limitations. The circuit court granted the motion and dismissed the case. Jonathan now appeals, alleging that the circuit court erred in finding that the statute of limitations for his claims began to run on

the day Amelia passed away.[1]

¶2.    Because the two-year limitations period had run by the time Jonathan filed his complaint, we affirm the dismissal of this claim via summary judgment.  By holding that Jonathan's wrongful-death claim is barred by the statute of limitations, his other claims are likewise barred.  For that reason we will not address Jonathan's claims for loss of consortium and negligent infliction of emotional distress.

## FACTS AND PROCEDURAL HISTORY

¶3.    Amelia Butler was a seventy-year-old, long-term care patient first admitted to Bolivar following a stroke.  Amelia passed away on January 7, 2013, after being moved several times between Bolivar and a specialty hospital in Greenwood, Mississippi.  When she was first admitted to Bolivar, Amelia was unable to bear weight and remained mostly bed bound. Bolivar's records indicate that Amelia had no skin breakdown upon her arrival.  However, over the next seven months, she developed multiple stage III and stage IV decubitus ulcers.[2] Amelia's death certificate was issued on January 22, 2013.  The certificate listed the following as her cause of death: (1) cardiopulmonary arrest; (2) severe sepsis; and (3) multiple decubitus ulcers.

¶4.    Amelia was posthumously transferred to Redmond Funeral Home.  A funeral home

---

[1] We recognize that the notice of appeal includes the phrase "et. al.," [sic] and we use the word "Jonathan" in this opinion for brevity.

[2] Stage III decubitus ulcers extend into the tissue beneath the skin, forming a small crater.  Fat may show in the sore, but not muscle, tendon, or bone.  At stage IV, the wound is very deep, reaching into muscle and bone and causing extensive damage. Damage to deeper tissues, tendons, and joints may occur.

employee called her son, Jonathan, and told him that he needed to come immediately. There Jonathan was shown the various wounds on his mother's body. He took photographs of her injuries. Afterward, Jonathan collected Amelia's records from her medical providers to "get answers" for his mother.

¶5.    Jonathan then proceeded to contact an attorney, who in turn enlisted a medical expert's help to determine Amelia's cause of death. The medical expert provided a report on June 1, 2015. The expert concluded Bolivar had breached the standard of care owed to Amelia Butler. This breach was a contributing cause of Amelia's death. A notice of intent was provided to Bolivar on August 31, 2015, and the complaint was filed December 15, 2015.

¶6.    Bolivar sought dismissal, arguing that Jonathan knew of Amelia's injuries and had been put on notice of any potential negligence before Amelia's passing. At the hearing, the court found that Amelia's wounds were not latent injuries, and so the statute of limitations began to run on the date of her death. Jonathan now appeals the dismissal of his claims.

## STANDARD OF REVIEW

¶7.    "A trial court's grant of summary judgment is reviewed de novo." *Johnson v. Pace*, 122 So. 3d 66, 68 (¶7) (Miss. 2013). "Furthermore, application of a statute of limitation is a question of law to which a de novo standard also applies." *Sarris v. Smith*, 782 So. 2d 721, 723 (¶6) (Miss. 2001).

## DISCUSSION

¶8.    Mississippi provides claimants two years to file a medical malpractice claim. Miss.

3

Code Ann. § 15-1-36(2) (Rev. 2012). The two years commence and begin running on the "date of the alleged act, omission, or neglect." *Id*. Our Legislature saw fit to incorporate a built-in discovery rule within the statute to protect claimants with latent injuries. *Neglen v. Breazeale*, 945 So. 2d 988, 990 (¶9) (Miss. 2006). The discovery rule tolls the statute of limitations period until a claimant, using reasonable diligence, could have first known of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner. *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 43 (¶27) (Miss. 2007). This rule redirects the focus from when the injury occurred to when the negligence causing the injury was discovered. *Waldrup v. Eads*, 180 So. 3d 820, 826 (¶33) (Miss. Ct. App. 2015).

¶9. There is no precise formula to determine whether or not the discovery rule will toll a statute of limitations. *Huss v. Gayden*, 991 So. 162, 166 (¶6) (Miss. 2008). Whether a claimant has sufficient notice of a viable claim is to be determined on a case-by-case basis. *Sarris*, 782 So. 2d at 725 (¶13). In cases where there is a strong dispute over the applicability of the discovery rule, the issue should be determined by a jury. *Miss. Valley Silica Co. Inc. v. Barnett*, 227 So. 3d 1102, 1119 (¶44) (Miss. Ct. App. 2016). Here, the circuit court held Jonathan waited too long to file suit.

¶10. The parties do not dispute that Jonathan filed suit more than two years after Amelia's death. However, Jonathan argues that Amelia's cause of death, and consequently any negligence, could not reasonably be discovered without an expert. In his view, this context means the statute of limitations period was tolled during the time it took to procure an expert

4

report. Yet the statute of limitations period does not automatically toll while awaiting an expert opinion. *Waldrup*, 180 So. 3d at 827 (¶34). "The question of whether a statute of limitations is tolled by the discovery rule turns on the factual determination of what the plaintiff knew and when." *Raddin v. Manchester Educ. Found. Inc.* 175 So. 3d 1243, 1249 (¶13) (Miss. 2015).

¶11. Bolivar argues that due to the visible nature of Amelia's injuries Jonathan was put on notice of potential negligence before Amelia's death, meaning that the statute of limitations period had begun to run before Amelia's death. Bolivar contends that the statute of limitations period began on the day Amelia passed, or at the latest when the death certificate was issued.

¶12. Jonathan's wrongful-death action did not begin to accrue before Amelia's passing, when the statute of limitations on a wrongful-death claim, by its very nature, cannot begin to run until death. *Saul ex rel. Heirs of Cook v. S. Cent. Reg'l Med. Ctr. Inc.*, 25 So. 3d 1037, 1040 n.4 (Miss. 2010). Additionally, while not every death certificate will initiate the running of the statute of limitations, here the death certificate combined with other factors established sufficient notice of a claim. The death certificate listed the decubitus ulcers as one of Amelia's causes of death. Jonathan conceded that he was aware of Amelia's wounds and that Bolivar was treating the wounds she had acquired there. He repeatedly asked whether the wounds that had developed and/or progressed at Bolivar were healing. His knowledge of his mother's wounds put him on notice that something was amiss. This knowledge, combined with the death certificate, served as a unique example of notice

sufficient to trigger the statute of limitations period.

¶13.     Further, Jonathan did not obtain an expert opinion for more than two-and-a-half years after Amelia passed away.  This does not follow the "reasonable diligence" requirement set out by the discovery rule.

¶14.     State law requires potential claimants to file "an accompanying certificate of consultation with an expert or a certificate of counsel stating that a consultation has not been obtained due to the running of the statute of limitations or an inability to secure consultation with expert." *Gray v. Univ. of Miss. Sch. of Med.*, 996 So. 2d 75, 79 (¶13) (Miss. Ct. App. 2008); Miss. Code Ann. § 11-1-58 (Rev. 2014).  In some cases an expert is necessary for a potential plaintiff to become aware of a viable claim.  In those cases the discovery rule will toll the statute of limitations.  *See Sarris*, 782 So. 2d at 725 (¶13).  As a result, there is not a bright line rule that a death certificate will begin running the statute of limitations in all cases, and the death of a patient will not always automatically start the statute of limitations period.

¶15.     In this case the circuit court found that all claims were time-barred and granted Bolivar's motion for summary judgment.  Given the notice provided by the death certificate and other surrounding factors, we cannot say this was incorrect as a matter of law.

### CONCLUSION

¶16.     We affirm the circuit court's holding that Jonathan's claims are time-barred by the statute of limitations.

¶17.     **AFFIRMED**.

6

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**